

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2005

# Budget Rent Car Sys v. Chappell

Precedential or Non-Precedential: Precedential

Docket No. 04-1931

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Budget Rent Car Sys v. Chappell" (2005). *2005 Decisions.* Paper 1105.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1105

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1931

BUDGET RENT-A-CAR SYSTEM, INC.

v.

NICOLE CHAPPELL;
JOSEPH POWELL, III

Nicole Chappell,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 02-cv-08975)
District Judge: Honorable Stewart Dalzell

Argued February 15, 2005

Before: SLOVITER,  AMBRO
and ALDISERT, Circuit Judges

Roger L. Simon, Esquire (Argued)
Friedman & Simon
333 Jericho Turnpike, Suite 318
Jericho, NY   11753

      Counsel for Appellant

Stephen A. Scheuerle, Esquire (Argued)
Hohn & Scheuerle
1835 Market Street
Eleven Penn Center, Suite 2901
Philadelphia, PA   19103

      Counsel for Appellee

---

## OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

We apply Pennsylvania's choice-of-law rules to determine which state's substantive law (New York's, Michican's or Pennsylvania's) governs the extent of vicarious liability of Budget Rent-a-Car System, Inc. ("Budget"), the owner of a vehicle involved in an accident that rendered Nicole Chappell ("Chappell"), a New York resident, permanently

paralyzed. The accident occurred in Pennsylvania as Chappell and her boyfriend, Joseph Powell, III ("Powell"), a Michigan resident, were driving from New York to Michigan in a car Powell had rented from Budget in Michigan (and previously driven to New York).

Because the State of New York has the greatest interest in the application of its law to this dispute, we conclude that its law should apply. The contrary judgment of the District Court is reversed.

## I. Pertinent Facts and Procedural History

On the morning of February 12, 2002, Powell rented a Nissan Xterra from Budget in Michigan. Later that day, he drove eight hours to New York to visit Chappell. Powell stayed with Chappell in New York for the rest of that week. On the evening of February 15, after Chappell completed her work week, she and Powell left New York in the Xterra, planning to drive to Michigan to spend the weekend together there.

While driving through Pennsylvania early the next morning, Powell fell asleep at the wheel. The car drifted from the left lane of Interstate 80 across the right lane and into the right guardrail, causing it to flip over. Powell escaped the crash without substantial physical injury. However, the force of the impact ejected Chappell from the Xterra, causing severe injuries. Shortly after the accident, a helicopter transported her

3

to Mercy Hospital in Pittsburgh, where doctors diagnosed, among other injuries, spinal trauma that has rendered Chappell permanently paraplegic.

Budget initiated this action in the United States District Court for the Eastern District of Pennsylvania, seeking a declaratory judgment against Powell and Chappell and asking the Court to determine which state's substantive law governed its vicarious liability as the owner of the vehicle.[1] Budget argued that Michigan law should apply, capping its liability at $20,000. Chappell brought two counterclaims against Budget (vicarious liability and negligent entrustment) and a cross-claim against Powell. She argued that Budget faced unlimited vicarious liability under New York law.

The parties cross-moved for summary judgment on the choice-of-law issue, and the District Court granted summary judgment to Budget, holding that Pennsylvania law applied. Chappell moved for a certification of the issue and entry of a final judgment under Fed. R. Civ. P. 54(b). After the District

---

[1] The District Court exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332. As noted, Chappell is a New York resident and Powell is a Michigan resident. Budget Systems, Inc. was a Delaware corporation that maintained its principal place of business in Illinois. Subsequent to the accident, it was acquired by Budget, which was and remains a Delaware corporation with its principal place of business in New Jersey.

Court granted that motion and entered a final judgment, Chappell timely appealed. We exercise appellate jurisdiction to review the District Court's final judgment under 28 U.S.C. § 1291.

## II. Legal Framework

### A. Pennsylvania Choice-of-Law

To determine which state's substantive law governs, we must refer to the choice-of-law rules of the jurisdiction in which the District Court sits, here Pennsylvania. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Melville v. American Home Assur. Co., 584 F.2d 1306, 1308 (3d Cir. 1978). Under Pennsylvania law, we begin with an "interest analysis" of the policies of all interested states and then—based on the result of that analysis—characterize the case as a true conflict, false conflict, or unprovided-for case. LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996); Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 & n.15 (3d Cir. 1991).

A true conflict exists "when the governmental interests of [multiple] jurisdictions would be impaired if their law were not applied." Lacey, 932 F.2d at 187 n.15. If a case presents a true conflict, Pennsylvania choice-of-law rules "call for the application of the law of the state having the most significant contacts or relationships with the particular issue." In re Estate

5

of Agostini, 457 A.2d 861, 871 (Pa. Super. Ct. 1983). As explained in the Second Restatement of Conflict of Laws,

> the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

"A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." Lacey, 932 F.2d at 187. If there is a false conflict, we must apply the law of the only interested jurisdiction. See, e.g., Kuchinic v. McCrory, 222 A.2d 897, 899–900 (Pa. 1966); Griffith v. United Air Lines, Inc., 203 A.2d 796, 807 (Pa. 1964).

Finally, an unprovided-for case arises when no jurisdiction's interests would be impaired if its laws were not applied. *Lex loci delicti* (the law of the place of the

6

wrong—here Pennsylvania) continues to govern unprovided-for cases.  See, e.g., Miller v. Gay, 470 A.2d 1353, 1355–56 (Pa. Super. Ct. 1983).

With this background, we turn to the competing state laws we consider applying.

### B.    Relevant State Law Provisions on Vicarious Liability

#### 1.    New York

New York law imposes unlimited vicarious liability on the owners of vehicles.  It provides that "[e]very owner of a vehicle used or operated in [that] state shall be liable and responsible for . . . injuries to person[s] . . . resulting from negligence in the use or operation of such vehicle . . . ."  N.Y. Veh. & Traf. Law § 388(1) (McKinney 2002).  By passing § 388(1), the New York "[l]egislature intended that the injured party be afforded a financially responsible insured person against whom to recover for injuries."  Plath v. Justus, 268 N.E.2d 117, 119 (N.Y. 1971).

It is beyond dispute that § 388(1) has extraterritorial scope, that is, it can apply to accidents occurring beyond New York's borders.  Farber v. Smolack, 229 N.E.2d 36, 40 (N.Y. 1967) (holding that "[t]o the extent . . . earlier decisions declined to give extraterritorial effect to [§ 388], they are overruled").

7

This dispute requires us to assess the *extent* of the extraterritorial scope of § 388(1). The New York Court of Appeals has held that "vicarious liability imposed by section 388(1) does not extend to owners of *vehicles that have never been registered, used, operated or intended for use within [New York]*." Fried v. Seippel, 599 N.E.2d 651, 654 (N.Y. 1992) (emphasis added). We later address whether (under New York law) the Xterra in our case falls within that exclusion.

### 2.    Michigan

Michigan also imposes vicarious liability on the owners of vehicles. Its law provides that "[t]he owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle . . . [if] the motor vehicle is being driven with his or her express or implied consent or knowledge." Mich. Comp. Laws § 257.401(1) (2003) ("Subsection 1"). Liability is capped, however, in certain circumstances: "[The liability of] a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period of 30 days or less . . . is limited to $20,000.00 because of bodily injury to or death of 1 person in any 1 accident . . . ." Mich. Comp. Laws § 257.401(3) (2003) ("Subsection 3"). In effect, vicarious liability is imposed on an owner when the driver's negligence causes an accident in another state so long as the owner-driver relationship was entered into in Michigan. Sexton v. Ryder Truck Rental, Inc., 320 N.W.2d 843, 856

8

(Mich. 1982).

At the time of Chappell's accident, Michigan law provided that it was a misdemeanor for "an owner knowingly [to] permit to be operated, upon any highway, a vehicle required to be registered . . . unless there is attached to and displayed on the vehicle . . . a valid registration plate issued for the vehicle . . . ." Mich. Comp. Laws §§ 257.255(1), (2) (2001).[2]

---

[2] The parties presented (and the District Court relied on) several legal arguments implicating the significance of this provision, all involving events that took place before Powell rented the vehicle. For reasons explained below, we need not reach these arguments. For the sake of completeness, however, we set out the pertinent pre-rental facts.

Assuming that Budget followed its regular procedures, after the Xterra arrived in Romulus, Michigan (on or about January 30, 2002), a Budget fleet clerk obtained Michigan license plate NVQ532 and placed that plate on one of the Xterra's seats. A "lot person" later removed the plate from the Xterra's seat and affixed it to the vehicle.

After placing the plate in the Xterra, the fleet clerk wrote license plate number "NVQ532" at the top of the vehicle's certificate of origin and took the certificate to the office of Michigan's Secretary of State. Someone unknown crossed out the fleet clerk's initial reference to "NVQ532" and wrote "PHS756" next to it.

Michigan license plate NVQ532 was registered for use with a 2001 Ford with Vehicle Identification Number

### 3. Pennsylvania

Pennsylvania follows the common law rule that, absent an employer-employee relationship, an automobile's owner is not vicariously liable for the negligence of its driver. <u>Solomon v. Commonwealth Trust Co.</u>, 100 A. 534, 535 (Pa. 1917); <u>Shuman Estate v. Weber</u>, 419 A.2d 169, 172 (Pa. Super. 1980).

## III. Analysis

### A. District Court Opinion

The District Court's opinion is a plot-twister. The case starts simply enough: "the parties [sought] a declaratory judgment . . . whether the law of *New York* or *Michigan* governs the extent of Budget's vicarious liability to Chappell . . . ." <u>Budget Rent-A-Car System, Inc. v. Chappell</u>, 304 F. Supp. 2d

1FAFP55201G235610 that Team Fleet Financial Corporation ("Team Fleet") owned. Team Fleet leased its vehicles to Budget. Budget's fleet clerk had access to a plate registered to a vehicle that Team Fleet owned.

An employee at the Secretary of State's office used the certificate of origin, including the handwritten annotation for the license plate, to register the Xterra and to create an Application for Michigan Vehicle Title for it. The Michigan Secretary of State's office registered the Xterra with Michigan license plate PHS756 and prepared a title application for the transfer of Michigan license plate PHS756 to the Xterra.

639, 644 (E.D. Pa. 2004) (emphases added). "[M]indful" of what it described as "[a] delicious irony in how the parties briefed this case," id. at 650 n.17, the District Court "concluded that *Pennsylvania* law controls the resolution of the issues," id. at 651 (emphasis added).

This conclusion unfolds as follows. The Court assessed New York and Michigan's respective vicarious liability provisions, reaching the following two intermediate determinations. First, it "predict[ed] that the New York Court of Appeals" would "avoid the serious [federal] constitutional questions" it perceived in § 388(1) by concluding that the statute's "reference to 'vehicle[s] used or operated' in New York [does not] cover vehicles that are registered outside of New York and that were not being used or operated in New York at the time of an accident," id. at 647–48. Second, it decided that Budget could not invoke Michigan's limitation of liability for short-term lessors of cars in Subsection 3 because "the lease between Budget Systems and Powell was 'founded on' a misdemeanor—Budget Systems's grant of permission to operate the Xterra without a valid license plate—" and is therefore a "nullity" under Michigan law, id. at 650.

Having determined that neither New York's nor Michigan's substantive legal provisions would apply in this case, the District Court reasoned that neither state had an interest in applying its law. Id. at 650–51. That is, the Court characterized this dispute as an unprovided-for case. Id. at 651.

11

As a result, it held that the rule of *lex loci delicti* governed, Pennsylvania's substantive law applied, and thus Budget did not face vicarious liability.  Id.

In sum, the District Court's choice-of-law ruling rested on its limiting interpretations of New York and Michigan substantive law.  Before turning to the choice-of-law inquiry, we address the propriety of those legal interpretations.

**B.      Does New York's § 388(1) Apply to This Dispute?**

The District Court predicted that the State of New York would not construe § 388(1) to apply to this case.  Our review of this prediction is plenary.  Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).  We disagree with the District Court's analysis and conclude that this case falls within the scope of § 388(1) as that statute has been construed by New York's courts.

Our core query is what does the phrase "used or operated in [New York]" in § 388(1) mean?  Fortunately, New York's Court of Appeals has addressed this question on several occasions.

In Farber v. Smolack, the Court of Appeals implied that § 388(1) has as broad a scope of *substantive* application as

12

would be consistent with New York's *choice-of-law* principles.[3] When "New York is . . . the jurisdiction having 'the most significant relationship' with the issue presented," § 388(1) applies. Farber, 229 N.E.2d at 40 (citations omitted). While this formulation is unfortunate inasmuch as it conflates—or at least equates—the substantive law question (the scope of the statute) with the choice-of-law issue (the extent of New York's interest in applying the statute),[4] this early precedent nonetheless

---

[3] Farber involved the following facts and disposition. Robert Smolack loaned his automobile to his brother, Arthur, so that Arthur could drive his family to Florida and back. While in North Carolina, Arthur's negligence caused an accident in which his wife was killed and his two sons were seriously injured. Representatives of the wife's estate and of the children sued Robert under § 388(1), but the trial court dismissed the claim, holding that the provision did not apply. The Court of Appeals reversed, stressing that "[all parties] were citizens and domiciliaries of New York; the car was registered in New York; arrangements for its use had been made in New York; and it was on its way back to New York when the accident occurred." Id. at 38.

[4] The District Court in our case recognized the important distinction between these questions, explaining that when it "focus[ed] first on the issue of whether Section 388 covers these facts," it "[would] not address the myriad cases that have considered the applicability of that statute based on choice-of-law principles." Budget, 304 F. Supp. 2d at 646 n.12.

13

sets the principle that New York will broadly apply § 388(1), perhaps as broadly as is permissible under constitutional choice-of-law principles.

Eight years later, in Sentry Ins. Co. v. Amsel, 327 N.E.2d 635 (N.Y. 1975), the New York Court of Appeals again stressed the broad scope of the statute, explaining that "[t]he legislative history of [§ 388(1)] indicates that the Legislature intended to enlarge the vehicle owner's vicarious liability and not to draw the line at the border." Id. at 637.

Most recently, in Fried v. Seippel, the Court of Appeals directly addressed the scope of the statute and held that the "vicarious liability imposed by section 388(1) does not extend to owners of vehicles that have *never been registered, used, operated or intended for use within [New York]*." 599 N.E.2d at 654 (emphasis added). In Fried, Avis (which operated in New York) owned a Jamaican car rental company that rented a vehicle of Jamaican registry to Seippel, a New York resident. Seippel and Fried (also a New York resident) were in the car in Jamaica when one of them[5] negligently caused a head-on collision. Fried died in the accident. His representatives sued Avis under § 388(1), and the trial court denied Avis's motion for summary judgment based on the Jamaican company's ownership of the vehicle. Putting aside the issue whether Avis should be

_____

[5] The Court concluded that it was unclear whether Fried or Seippel was driving. Fried, 599 N.E.2d at 652.

14

deemed the vehicle's owner, the Court of Appeals held that § 388(1) did not apply because the car "ha[d] never been registered, used, operated or intended for use within [New York]." Fried, 599 N.E.2d at 654.

## 1.     Scope of the Statute

Noting that "[t]he facts here fall in the middle ground between Farber and Fried because the Xterra was not registered in New York but Powell did drive it there," the District Court interpreted these cases to mean that "New York courts would conclude that the New York legislature did not intend . . . to cover vehicles that are registered outside of New York and that were not being used or operated in New York at the time of an accident." Budget, 304 F. Supp. 2d at 647–48. We disagree with this creative legal interpretation.

The Fried Court stated that "the holding in Farber ha[d] little bearing on the statutory construction problem presented [in Fried], since, *by virtue of its prior 'use . . . or operat[ion] in [New York],' the accident vehicle in Farber was indisputably within section 388's substantive coverage . . . .*" Fried, 599 N.E.2d at 654 (emphasis added). This statement by New York's highest Court is irreconcilable with the District Court's view and is arguably sufficient of itself to settle the statutory construction issue before us. As in Farber, by virtue of its prior use and operation in New York, the accident vehicle here is indisputably within § 388's substantive coverage.

15

Yet we need not labor, as the District Court did, to discern the scope of New York's law from the disposition of its precedents, for the Fried Court explicitly drew a line for us: "vicarious liability imposed by section 388(1) does not extend to owners of vehicles that have *never been registered, used, operated or intended for use within this State*." Fried, 599 N.E.2d at 654 (emphasis added). The vehicle in this case was used, operated *and* intended for use within New York.

Lest we be left with doubt as to the meaning of the seemingly clear rule announced in Fried, we refer to New York's intermediate courts for further guidance. "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940). In Vasquez v. Christian Herald Ass'n, 588 N.Y.S.2d 291, 292 (N.Y. App. Div. 1992), only five months after Fried, the First Department of the Appellate Division of New York's Supreme Court cited Fried as authority for the applicability of § 388(1) to facts similar to this case.[6] Leave to appeal the intermediate appellate court's

_____

[6] In Vasquez one plaintiff was a New York resident (the other an Ohio resident), the owner of the vehicle was a Pennsylvania resident (a co-defendant was a New York resident), and the accident took place in Pennsylvania. The Court explained that

16

decision in <u>Vasquez</u> was denied by the Court of Appeals.[7]

In short, the District Court's conclusion that § 388(1) does not "cover vehicles that are registered outside of New York and that were not being used or operated in New York at the time of an accident," <u>Budget</u>, 304 F. Supp. 2d at 648, runs afoul of New York's precedent. To the contrary, the provision applies unless the accident vehicle "ha[s] *never* been registered, used, operated or intended for use within [New York]." <u>Fried</u>, 599

---

the "[d]efendant . . . erroneously relie[d] upon . . . <u>Fried</u> . . . [because] [an agent of the *New York* defendant (not the owner)] had operated the subject van to and from New York with [the New York defendant]'s permission." <u>Id.</u> The use of the car in New York was enough to extend liability under New York law to the Pennsylvania *owner* of the vehicle notwithstanding that the accident took place in Pennsylvania.

We also note that the United States District Court for the Eastern District of New York has decided, albeit in a not precedential opinion we cite solely as persuasive authority, that § 388(1) applied to an out-of-state accident involving a car not registered in New York on the basis of prior use and operation of the vehicle in the State. <u>Roberts v. Xtra Lease, Inc.</u>, No. 98 CV 7559, 2001 WL 984872, at *7 (E.D.N.Y. June 25, 2001).

[7]  When a state's highest court denies review, the policy reasons for following an intermediate court decision (absent compelling evidence to the contrary) are strengthened. <u>See</u>, <u>e.g.</u>, <u>Comer v. Texaco, Inc.</u>, 514 F.2d 1243, 1244 (5th Cir. 1975).

17

N.E.2d at 654 (emphasis added). Thus, the provision applies to our case.

## 2. Constitutional Concerns

The District Court's construction of § 388(1) was premised on its perception that applying the statute in this case would implicate federal constitutional problems. It predicted that the New York courts would adopt its specific limiting construction of the statute in order "[t]o avoid the serious constitutional questions that interpreting Section 388 to cover the facts of this case would raise . . . ." Budget, 304 F. Supp. 2d at 648. That is, the District Court interpreted New York law to require that a court invoke the doctrine of constitutional avoidance in order to sidestep potential constitutional problems raised by the application of the statute in this case. It further predicted that the New York courts would adopt a limiting construction imposing its bright-line registration requirement. We have already disagreed with the District Court's construction of the statute. We now address the constitutional concerns it perceived.

To be technical, the Court did not actually hold that application of § 388(1) would be unconstitutional. It simply predicted that the courts of New York "would recognize that the United States Supreme Court has held that due process forbids states from regulating extraterritorial activities with which they have 'slight' or 'casual' connection" and avoid the issue

18

altogether by narrowing the statutory scope. Id. at 647–48 (citing Hartford Accident & Indem. Co. v. Delta & Pine Land Co., 292 U.S. 143 (1934); Home Ins. Co. v. Dick, 281 U.S. 397 (1930)). Having parted from the District Court's statutory interpretation, we ask simply whether application of the statute in this case under the Fried rule would violate the Constitution (as opposed to asking whether New York courts would perceive the application of the statute in this case as a potential constitutional problem they should avoid by adopting the District Court's construction).

The Supreme Court has spoken on this issue since 1934, when the most recent case cited by the District Court was decided. In fact, the precedent that gave rise to the District Court's constitutional apprehensions is widely recognized to be irrelevant under modern law. As Chappell points out, Delta and Dick were decided before the modern states' interest framework for choice-of-law analysis began to dominate. The plurality opinion in Allstate Ins. Co. v. Hague, 449 U.S. 302 (1981), for example, noted that Delta has "scant relevance for today" because "[i]t implied a choice–of–law analysis which, for all intents and purposes, gave an isolated event . . . controlling constitutional significance, even though *there might have been contacts with another State . . . which would make application of its law neither unfair nor unexpected*." Id. at 309 n.11 (emphasis added). See also Clay v. Sun Ins. Office, Ltd., 377 U.S. 179 (1964); Watson v. Employers Liab. Assurance Corp., 348 U.S. 66 (1954).

19

In Hague the Supreme Court stated that in order for the substantive law of a state "to be selected in a constitutionally permissible manner, the state must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." 449 U.S. at 312–13. In that case, a Wisconsin resident who had three automobile insurance policies was killed in an accident in Wisconsin by an uninsured motorist. Suit was filed in Minnesota by the decedent's personal representative to recover under the uninsured motorist endorsements of the three policies. Minnesota permitted the stacking of policies, while Wisconsin did not. The Supreme Court affirmed the application of Minnesota law on the basis of three contacts that it found, in aggregate, constitutionally sufficient:

> First, . . . Mr. Hague was a member of Minnesota's work force, having been employed by a Red Wing, Minn., enterprise for the 15 years preceding his death. . . . Mr. Hague's residence in Wisconsin does not . . . constitutionally mandate application of Wisconsin law to the exclusion of forum law. . . . Second, Allstate was at all times present and doing business in Minnesota. By virtue of its presence, Allstate can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the company is involved. . . . Third, respondent became a

20

> Minnesota resident prior to institution of this litigation.

Id. at 313–18. We have no doubt that this case passes the Hague standard for a constitutionally permissible choice of law. All three of the factors the Court relied on in Hague are present here, plus many more. As a result, we see no constitutional problem with the choice of New York's substantive law to govern this dispute.

We note an additional problem we perceive with the District Court's analysis. The Court viewed Hague's forebears as a limitation on the permissible interpretation of the scope of New York's *substantive* law. Yet, as best illustrated by Hague, the relevant issue is the constitutionality of a *choice* of substantive law (not constitutional limitations on the permissible scope of a state's substantive law). In our case we must ask whether New York's substantive law would constitutionally apply to the facts we review, not whether New York could permissibly choose to apply its law (the choice of which substantive law to apply being an issue reserved to Pennsylvania law). Put colloquially, applying choice-of-law principles to the analysis of the constitutional scope of New York's substantive law mixes apples and oranges. For our purposes, it is sufficient to conclude that there is no constitutional bar to the application of New York law to this dispute.

## C. Does Michigan's Subsection 3 Apply to this Dispute?

As noted, the District Court concluded that Budget could not invoke Michigan's limitation of liability for short-term lessors of cars in subsection 3 because "the lease between Budget Systems and Powell was 'founded on' a misdemeanor—Budget Systems's grant of permission to operate the Xterra without a valid license plate—" and was therefore a "nullity" under Michigan law. Budget, 304 F. Supp. 2d at 650. The parties vigorously dispute the propriety of this holding. Because we conclude below that New York's interest in applying its law far outweighs any interest Michigan might have in applying subsection 3 (that is, assuming subsection 3 *would* apply), we find it unnecessary to address the competing, complex statutory interpretation arguments presented by the parties.[8] Instead, we leave the construction question to the State of Michigan and assume without holding that Michigan's

_____

[8] If Michigan's subsection 3 does not apply to this case, then only New York has an interest in applying its law and this case would be a "false conflict." New York law would clearly apply. If subsection 3 does apply, Michigan has an interest in applying its law and we must weigh the "true conflict" between its interest and that of New York. Because we conclude that New York's interest trumps in any event, we need not settle the construction of Michigan law because we reach the same result under either construction.

22

subsection 3 would apply and limit Budget's liability in this case. Under this assumption, we turn to New York and Michigan's competing interests.

### D. Identification and Weighing of State Interests

In choosing between Michigan and New York law,[9] we consider, *inter alia*, "the relevant policies of [the] interested states and the relative interests of those states in the determination of the particular issue." Restatement (Second) of Conflict of Laws § 6 (1971). New York's § 388(1) "was enacted to ensure access by injured persons to a financially responsible [party] against whom to recover for injuries and to change th[e] common-law rule and to impose liability upon the owner of a vehicle for the negligence of a person legally operating the car with the permission, express or implied, of the owner." Hassan v. Montuori, 786 N.E.2d 25, 27 (N.Y. 2003)

---

[9] It is clear that Pennsylvania does not have an interest in applying its law to this dispute. But for the chance occurrence of the accident in Pennsylvania, there is no connection between the Commonwealth and the parties. Pennsylvania has no interest in securing a recovery for Chappell nor in limiting Budget's liability. The District Court held that Pennsylvania law applied by default under the rule of *lex loci delicti* because neither New York nor Michigan had an interest in applying its law. We have already stated our disagreement with those predicate determinations.

23

(internal quotations omitted); Morris v. Snappy Car Rental, 637 N.E.2d 253, 255 (N.Y. 1994). "Another . . . interest is in assuring that New York vendors who furnish medical and hospital care to injured parties are compensated . . . . Finally, New York has a public fiscal interest in assuring that . . . New York State can recoup its welfare expense[s] from [victims'] recover[ies]." Bray v. Cox, 333 N.Y.S.2d 783, 785–86 (N.Y. App. Div. 1972).

Describing Michigan's subsection 3, the District Court explained that "[i]n response to car rental companies' complaints that Subsection 1[—which provides for unlimited vicarious liability—]was 'inhibiting the growth of the [rental car] industry and threatening to drive some companies out of the state,' the Michigan legislature amended the law in June of 1995 [to add subsection 3]." Budget, 304 F. Supp. 2d at 648 (quoting DeHart v. Joe Lunghamer Chevrolet, Inc., 607 N.W.2d 417, 420 (Mich. Ct. App. 1999)). That is, subsection 3 was codified to advance Michigan's interest in preventing rental car companies from deciding not to do business (or to do less business) in the State of Michigan for fear of unlimited vicarious liability.

Having identified the competing state policies implicated by this dispute, we turn to the states' relative interests in those policies. New York's interest is clear, direct and compelling. Chappell is a New York resident receiving treatment and care from medical providers in New York with the aid of New York-administered welfare programs. Each of New York's policy

24

justifications for enacting § 388(1) is directly implicated by this case, and New York's interest runs to the full extent of Chappell's recovery, dollar for dollar. It has an interest in (1) Chappell's full recovery from a financially responsible party, (2) the compensation of New York vendors who furnish medical and hospital care to Chappell, and (3) recouping the State's welfare expenses.

Michigan, unlike New York, does not have an interest in securing a recovery for an injured citizen in this case (or associated state medical expenses). Its only interest lies in the extent of Budget's liability (or, put another way, in the potential application of subsection 3's liability cap). We doubt that Michigan's interest in the application of subsection 3 is implicated at all in this case. Is it plausible that Budget will decide not to do business in the State of Michigan if it is held liable under New York law for an accident that occurred in Pennsylvania involving a car rented in Michigan? In fact, the application of New York's more stringent law in this case likely *advances* Michigan's interest in making it a relatively attractive place for rental car companies to do business by highlighting the value of Michigan's liability cap. And if potential liability in other fora would undermine Budget's decision to do business in Michigan, there are steps it can take to preserve the value of Michigan's liability cap short of pulling out of the State. For example, Budget is free to limit to intrastate travel the permissible use of vehicles it rents in Michigan. It is similarly free contractually to bar its customers from operating its

25

vehicles in the State of New York. (We note that, far from restricting the use of vehicles in New York, Budget actually rents vehicles in that State, calling into question the necessity of a liability cap to induce rental car companies to do business in a state.) In short, Michigan's interest in this particular dispute is uncertain and tenuous at best.

We thus conclude that New York's interest in the application of its law to this dispute clearly trumps that of Michigan. Thus, under Pennsylvania's choice-of-law rules, New York law is to be applied.

## IV. Conclusion

The District Court erred in its conclusion that the facts of this case do not fall within the scope of New York's § 388(1). Because § 388(1) does apply to this case, and because New York's interest in applying that provision clearly outweighs any interest Michigan might (or might not) have in applying its liability cap, under Pennsylvania's choice-of-law rules New York law governs this dispute and Budget faces unlimited vicarious liability. The District Court's judgment is accordingly reversed.

26