

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-2-2005

# Garcia v. Plaza Oldsmobile

Precedential or Non-Precedential: Precedential

Docket No. 04-4332

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Garcia v. Plaza Oldsmobile" (2005). *2005 Decisions*. Paper 495.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/495

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 04-4332

————

RUDOLFO GARCIA;
MARITZA A. ESPINAL-GARCIA

v.

PLAZA OLDSMOBILE LTD., d/b/a PLAZA TOYOTA; TOYOTA
MOTOR NORTH AMERICA, INC.; TOYOTA MOTOR SALES,
U.S.A., INC.; TOYOTA MOTOR CREDIT CORPORATION;
TIMOTHY GLADNEY

————

Plaza Oldsmobile, LTD, d/b/a
Plaza Toyota,
                                    Appellant

————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 03-2404)
Honorable Richard P. Conaboy, District Judge

————

Argued July 12, 2005

Before: ALITO, BECKER, and GREENBERG, Circuit Judges.

(Filed: September 2, 2005)

————

OPINION OF THE COURT

————

Andre D. Bigda (argued)
Rosenn, Jenkins and Greenwald
15 South Franklin Street
Wilkes-Barre, PA 18711

    Attorneys for Appellees

John J. McGrath (argued)
McKissock & Hoffman
25 Chestnut Street
Suite 108
Haddonfield, N.J. 08033

    Attorneys for Appellant

———

OPINION OF THE COURT

———

GREENBERG, Circuit Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

This appeal requires us to answer a conflicts-of-laws question. The case arises from a motor vehicle accident in Pennsylvania on February 25, 2002, involving plaintiff-appellee Rodolfo Garcia (hereinafter "Garcia"), a Pennsylvania citizen, and defendant Timothy Gladney (hereinafter "Gladney"), a New York citizen and New York licensed driver. Garcia was driving a Dodge truck registered and insured in Pennsylvania. Gladney was driving a Toyota automobile that he had rented earlier that day in Brooklyn, New York, from defendant-appellant Plaza Oldsmobile (hereinafter "Plaza"), a New York corporation with its principal place of business in that state. Garcia alleged that he suffered permanent and disabling injuries as a result of the accident and that Plaza, as owner of the vehicle, was liable to him for his injuries. Consequently, he brought this diversity of citizenship action, in which the district court had jurisdiction under 28 U.S.C. § 1332, against Gladney and Plaza as well as certain other defendants not involved in this appeal.[1] Garcia's wife, plaintiff-appellee Maritza Espinal-Garcia, has joined in the action asserting a claim for loss of consortium but as a matter of convenience we will refer to Garcia as the plaintiff-appellee in the singular. As of the time that Plaza filed this appeal, there had not been a trial on liability for the accident, even as between Garcia and Gladney, and damages had not been determined, and, as far as we are aware, there still has not been a trial in the district court.

In the district court, Plaza and Garcia filed cross motions for

———

[1]Pursuant to a stipulation among the parties, the claims against all defendants except Plaza and Gladney were dismissed voluntarily.

2

partial summary judgment seeking a determination of whether the court should ascertain Plaza's potential liability by application of Pennsylvania's common law or section 388(1) of New York's Vehicle and Traffic Law. The distinction is likely to be critical because under Pennsylvania common law, which is predicated on traditional agency principles, regardless of Gladney's culpability Plaza could not be liable to Garcia whereas, under New York law, if Gladney is determined to be liable to Garcia, Plaza also would be liable to him as New York imposes vicarious liability on a vehicle owner for injuries arising from the negligence of anyone using or operating its vehicle with permission.[2] Compare Fried v. Seippel, 599 N.E.2d 651 (N.Y. 1992), with Ferry v. Fisher, 709 A.2d 399 (Pa. Super. Ct. 1998).[3] As

---

[2] Actually we are assuming in this opinion that Plaza would be liable to Garcia for Gladney's negligence under New York law but not under Pennsylvania law. Of course, in view of our result we will never know if this assumption is correct as Garcia will have no reason to attempt to establish that Plaza would be liable under Pennsylvania law which, from a plaintiff's point of view, is more onerous than New York law.

[3] Section 10208 of the Safe, Accountable, Flexible, Efficient Transportation Equity Act of 2005, a provision of the recently enacted 2005 federal Transportation Equity Act, provides as follows:

(a) In General – An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if –

(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and

(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

With respect to the effective date the act provides that:

would be expected, Garcia asserted that New York statutory law applied whereas Plaza contended that Pennsylvania common law applied. Surprisingly, the parties have not been able to direct our attention to any published opinion of any state or federal court in Pennsylvania directly addressing the conflicts-of-laws issue here.[4] The district court concluded that there was a false conflict between New York and Pennsylvania law, and that New York law applied and thus on June 4, 2004, granted Garcia's motion insofar as he requested the court to apply New York law. We will explain below what circumstances give rise to a false conflict.

Plaza then moved for certification of the June 4, 2004 order pursuant to 28 U.S.C. § 1292(b) so that it could seek leave from this court to appeal from that order and it moved, in the alternative, for reconsideration of the order. By order dated August 17, 2004, the district court granted Plaza's motion for certification under 28 U.S.C. § 1292(b) but denied its motion for reconsideration. We granted Plaza's petition for permission to appeal on November 4, 2004.

## II. DISCUSSION

As we have indicated the sole question presented on appeal is a narrow conflicts-of-law issue: whether the court should use Pennsylvania common law or New York's statutory law to determine if Plaza can be liable. We exercise plenary review over the choice of

---

(c) Applicablility and Effective Date -- Notwithstanding any other provision of law, this section shall apply with respect to any action commenced on or after the date of enactment of this section without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before such date of enactment.

In view of the circumstance that the act does not have retroactive affect with respect to pending litigation it is not material on this appeal though undoubtedly the act prospectively largely will eliminate the circumstances in which section 388(1) will be applied.

[4]The district court noted that the "precise issue [in this case] has not been addressed by any state or federal court sitting in Pennsylvania." Op. at 1.

4

law question raised by this appeal.  See Simon v. United States, 341 F.3d 193, 199 (3d Cir. 2003); Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988).

In a diversity of citizenship action, we determine which state's substantive law governs by applying the choice-of-law rules of the jurisdiction in which the district court sits, here Pennsylvania. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021 (1941); Petrella v. Kashlan, 826 F.2d 1340, 1343 (3d Cir. 1987); Melville v. American Home Assur. Co., 584 F.2d 1306, 1308 (3d Cir. 1978).  Griffith v. United Air Lines, Inc., 203 A.2d 796 (Pa. 1964), is Pennsylvania's leading conflicts-of-laws case.  In that case, the Pennsylvania Supreme Court abandoned the traditional lex loci delicti conflicts rule in which the law of the place of the wrong governed the substantive rights and liabilities of the parties and substituted "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." Id. at 805.  We have indicated that this methodology has evolved into a hybrid approach that "combines the approaches of both Restatement [(Second) of Conflict of Laws] (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)." Melville, 584 F.2d at 1311.

Under Pennsylvania law, before assessing the governmental interests of the jurisdictions whose law may control and examining their contacts with the dispute, we must determine what type of "conflict," if any, exists between the purported competing bodies of law.  See Kuchinic v. McCrory, 222 A.2d 897, 899-900 (Pa. 1966). We begin with an "interest analysis" of the policies of all interested states and then – based on the result of that analysis – determine whether the case involves a true or false conflict or whether it is unprovided for.  Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 169-70 (3d Cir. 2005); see also LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996).

There is a true conflict "when the governmental interests of both jurisdictions would be impaired if their law were not applied." Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 & n.15 (3d Cir. 1991) (emphasis in original).  If a case presents a true conflict, Pennsylvania choice-of-law rules "call for the application of the law of the state having the most significant contacts or relationships with the particular issue." In re Estate of Agostini, 457 A.2d 861, 871 (Pa. Super. Ct. 1983).  But there is a false conflict "if only one jurisdiction's governmental interests would be impaired by the

5

application of the other jurisdiction's law." Lacey, 932 F.2d at 187. If there is a false conflict, we apply the law of the only interested jurisdiction. See, e.g., Kuchinic v. McCrory, 222 A.2d at 899-900. Finally, there are unprovided-for cases in which neither jurisdiction's interests would be impaired if its laws are not applied.[5] The principle of lex loci delicti, the law of the place of the wrong, supplies the substantive law to be applied in unprovided-for cases. See Miller v. Gay, 470 A.2d 1353, 1355-56 (Pa. Super. Ct. 1983).[6]

In our conflicts-of-law analysis the first issue that we must address is whether New York's Vehicle and Traffic Law with respect to the issue at hand has extraterritorial application, and, accordingly, whether that law by its terms can be applied to determine liability for the Pennsylvania accident underlying this appeal. Section 388(1) of New York's Vehicle and Traffic Law provides that "[e]very owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries . . . resulting from negligence in the use or operation of such vehicle . . . by any person using or operating the same with the permission, express or implied, of such owner." N.Y. Veh. & Traf. Law § 388(1) (McKinney 2002). As we noted above, the statute imposes vicarious liability on vehicle owners for the negligence of anyone using or operating their vehicles with their permission, without regard to whether the owner by its negligence contributed to the accident.

Even though the wording of section 388(1) suggests that it could not apply to an accident without New York State as the section refers to vehicles "used or operated in this state," meaning New York, the New York Court of Appeals, the court of last resort in New York State, consistently has interpreted section 388(1) as having

_____

[5]While we use the term "neither" thus suggesting that, as here, only two jurisdictions can be involved, we are well aware that in some cases a court must choose among the law of multiple jurisdictions.

[6]Actually there is no conflict at all in cases of false conflict or in unprovided-for cases so that to be precise a court probably should refer to a "conflicts" question only when there is a true conflict and should refer to the other two situations as raising "choice" questions. We notice, however, that the courts do not seem to draw this distinction in their language usage and thus we, too, will not be concerned with this semantic distinction.

extraterritorial application.[7]  See e.g., Sentry Ins. Co. v. Amsel, 327 N.E.2d 635, 637 (N.Y. 1975); Farber v. Smolack, 229 N.E.2d 36, 38-39 (N.Y. 1967).  Obviously those decisions settle that issue for us.

Moreover, the extraterritorial reach of the statute becomes evident when one looks to the manner in which the New York Legislature has meshed section 388 to its insurance laws.  All owners of motor vehicles registered in New York State are required to carry at least the minimum insurance laid down by statute.  N.Y. Veh. & Traf. Law §§ 311, 312 (McKinney 1996).  Furthermore, that insurance must extend to claims arising out of the ownership, use, or operation of a vehicle "within the state of New York, or elsewhere in the United States in North America or the Dominion of Canada." N.Y. Veh. & Traf. Law § 311.4(a).  The New York courts have interpreted this section to show a "commendable concern not only for residents of [New York], but residents of other States who may be injured as a result of the activities of New York residents."  Tooker v. Lopez, 249 N.E.2d 394, 399 (N.Y. 1969).

The court in Fried, 599 N.E.2d 651, specifically addressed the

_____

[7]The Court of Appeals in Farber v. Smolack, 229 N.E.2d 36, 39 (N.Y. 1967), addressed the rationale behind the phrase's inclusion:

> Nor should we place undue emphasis on the term to which reference has been made 'in this state' in the statute. It is clear that in adding the words 'in this state' to the predecessor of subdivision 1 of section 388 (§ 59) in 1958 (L. 1958, ch. 577), the Legislature was not concerned with extraterritorial effect. It was substituting 'in this state' for the former words 'upon a public highway' in order to cover the situation of an accident on private roadways and parking lots (1958 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1958, No. 65], pp. 589-590).

We recognized the extraterritorial application of the provision in Budget Rent-A-Car Sys., 407 F.3d at 170 ("[I]t is beyond dispute that § 388(1) has extraterritorial scope, that is, it can apply to accidents occurring beyond New York's borders.").

scope of section 388 and held that "the provision applies unless the accident vehicle 'ha[s] <u>never</u> been registered, used, operated or intended for use within [New York.]'" <u>Budget Rent-A-Car Sys.</u>, 407 F.3d at 174 (quoting <u>Fried</u>) (emphasis in <u>Budget Rent-A-Car Sys.</u>). There is no dispute that the vehicle in the present matter was rented and driven in New York. <u>See</u> appellant's br. at 3. We recognize, therefore, that as a matter of New York law, section 388(1) can be applicable in this case and thus consider it in our choice-of-law analysis.

After having reached that conclusion, we agree with the district court that this case presents a "false conflict" and therefore the district court correctly determined that the law of the only interested jurisdiction, New York, must be applied. In our analysis we first examine New York's interest in having its law applied. The New York legislature in enacting section 388 furthered its dual policy of (1) providing injured plaintiffs with a financially responsible defendant, and (2) imposing a high degree of responsibility on owners who allow others to operate their vehicles, by enacting an all-embracing mandatory insurance scheme. <u>See</u> N.Y. Veh. & Traf. Law § 310(2) (McKinney 1996). In <u>Budget Rent-A-Car Sys.</u> we noted that section 388(1) "was enacted to ensure access by injured persons to a financially responsible [party] against whom to recover for injuries and to change th[e] common-law rule and to impose liability upon the owner of a vehicle for the negligence of a person legally operating the car with the permission, express or implied, of the owner." 407 F.3d at 177 (quoting <u>Hassan v. Montuori</u>, 786 N.E.2d 25, 27 (N.Y. 2003)).

It is clear that New York's interest in protecting persons injured by New York vehicles, whether injured or harmed within or without New York State, would be impaired by the application of Pennsylvania's less expansive liability law which in this case would free Plaza from liability. Moreover, it is difficult to conceive of any case in which a person injured in Pennsylvania or, indeed, in any common law state, would be better off by the application of local as opposed to New York law.[8] In short, a failure to apply section 388

_____

[8]While we will not discuss the possible approach of New York courts if for some reason section 388(1) did not apply when the owner was not the driver at the time of an accident as, for example, if the owner of the vehicle negligently had allowed the vehicle to be stolen, but nevertheless might be liable for damages attributable to the ensuing accident, it is possible that in such a situation they would apply common

8

would impair New York's interest in ensuring that entities such as Plaza share in New York's goal of protecting the victims of tortfeasors, as well as demanding responsibility of owners who allow others to operate their vehicles.[9] Furthermore, New York's interest in having its law applied to an owner in the position of Plaza clearly would be undermined by the application of Pennsylvania common law in a case such as this, in which the vehicle's operator and owner did not have an agency relationship, so that vicarious liability would not be imposed on the owner.

We realize that New York's interest in having its law applied here is somewhat diminished by the circumstance that Garcia is a Pennsylvania citizen. After all, in <u>Budget Rent-A-Car Sys.</u>, in applying section 388(1) to a Pennsylvania accident, we emphasized that the injured plaintiff was a "New York resident receiving treatment and care from medical providers in New York with the aid of New York-administered welfare programs." 407 F.3d at 177. But that determination is offset by the circumstances that Gladney rented the vehicle in New York and is a resident of New York. Moreover, the New York Court of Appeals in <u>Tooker</u> pointed out that the New York legislature has shown a "commendable concern" for residents of other states injured as a result of the activities of New York residents. That situation is involved here and we think that the legislature also has such concern for residents of other states injured by a vehicle leased in New York. In view of <u>Tooker</u> we reject Plaza's contention that Garcia offers "no authority to support a proposition that New York has a state interest in ensuring compensation to non-residents who are injured outside its border." Appellant's reply br. at 2.

We next analyze Pennsylvania's interest in the application of its common law. As the state of Garcia's domicile, Pennsylvania has an interest in providing for his recovery if Gladney is liable in order to make him whole. Yet it is clear that the application of New York's vicarious liability law cannot undermine the advancement of that interest. Simply put Plaza is unable to demonstrate how the application of New York's more plaintiff friendly provision would undermine Pennsylvania's interest in ensuring that its injured residents are compensated fully. We therefore agree with the district

---

law principles in ascertaining the owner's liability.

[9]New York law, at least in theory, should require diligence on the owner of a vehicle with respect to the driver of its vehicle beyond the duty imposed by negligent entrustment principles.

9

court that, "[e]ven if we were to consider Pennsylvania's adherence to the common law on the issue of owner liability as expressing an interest in establishing the scope of a vehicle owner's liability, this interest is not diminished where another state has statutorily imposed greater liability on its own citizens." Op. at 13.

In fact, we believe that the application of Pennsylvania law on the liability issue here, which would preclude Garcia from recovering from Plaza, does not further Pennsylvania's interest in protecting its residents and providing adequate recovery for its injured citizens. Moreover, as we explained above, we cannot conceive how the application of the common law as opposed to the New York statute to determine an owner's liability ever can be advantageous to a plaintiff and thus further the goal of providing full compensation for a plaintiff's injuries. Thus, we do not reach our result on a fact-specific basis to aid a single litigant. See Allwein v. Donegal Mut. Ins. Co., 671 A.2d 744, 750 (Pa. Super. Ct. 1996).

We also point out that while Pennsylvania law protects the owner of the vehicle from liability in a way that New York law does not, we cannot understand why Pennsylvania would have an interest in an owner of a vehicle from another state being shielded from vicarious liability imposed under the law of that state attributable to the negligence of a driver operating the vehicle with the owner's consent. This conclusion has particular force in a situation such as that here in which the entrustment of the vehicle was in the foreign state rather than in Pennsylvania.[10] We conclude, therefore, that no matter how we view this case Pennsylvania does not have a policy or interest that the application of New York law in this case would impair.

In summary, applying New York Law to impose liability on

---

[10]Obviously our result might be different if Gladney's lease had been executed in Pennsylvania and the vehicle had been delivered to him in Pennsylvania and if Gladney had not used the vehicle in New York, but Garcia nevertheless attempted to have the court apply New York law on a theory that prior to the accident the vehicle had been used or operated in New York State in a way completely unrelated to the accident involved here by a prior lessee with no connection to Gladney. In fact, notwithstanding rather broad language in some opinions, see Budget Rent-A-Car Sys., it might be that as a matter of New York law section 388 would not be applicable in such a situation. We however, do not need to explore this point and thus do not do so.

10

Plaza does not impair the interests of Pennsylvania, while on the contrary, the application of Pennsylvania law would impair New York's interest in providing injured plaintiffs with a financially responsible defendant, and imposing a high degree of responsibility on the owners of vehicles. See Lacey, 932 F.2d at 187. Therefore, this case presents a false conflict, and the district court should apply the law of the only interested jurisdiction, New York. Accordingly, the district court correctly granted summary judgment inasmuch as the judgment provided for the application of New York's Vehicle and Traffic Law § 388(1) in this case.

### III. CONCLUSION

For the foregoing reasons, we will affirm the order of June 4, 2004, and remand the case to the district court for further proceedings.

———