**HAZLETON AREA SCHOOL DISTRICT**

v.

**Howard O. KRASNOFF, A.I.A., Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 5, 1996.

Decided March 11, 1996.

Reargument Denied May 20, 1996.

Thomas B. Rutter, for Appellant.

David L. Grove, for Appellee.

Before DOYLE, PELLEGRINI and KELLEY, JJ.

PELLEGRINI, Judge.

Howard O. Krasnoff, A.I.A. (Krasnoff), appeals from a decision of the Court of Common Pleas of Philadelphia County (trial court) modifying an arbitrators' award in his favor from $612,172.00 plus interest to $57,-600.00 plus interest.

After an election in the Hazleton Area School District (School District) in 1985, the majority of the School Board was in favor of having three high schools rather than one centrally located high school. Because the view of the School Board regarding the organization of the high school apparently shifted after every election, the School Board, led by its president, James Capparell (Capparell), began to "fast track" its program.[1] To achieve this end, the School District entered into two contracts with Krasnoff for the pro-

---

1. As explained by Krasnoff in his brief, public school construction progresses through numerous stages with the approval of the School District, the Department of Education, the State Art Commission and other state agencies being required prior to proceeding onto the next stage. Krasnoff indicates that to "fast track" its program, the School District proceeded onto the next stage prior to obtaining the necessary approvals for the previous stages.

vision of architectural services. The first contract, executed on May 9, 1986, was for architectural services associated with the renovations and additions to the West Hazleton Junior/Senior High School for which Krasnoff was to be paid a flat fee of $525,000.00. On June 27, 1987, the School District and Krasnoff entered into another contract for the architectural services in connection with the construction of a new Hazleton Area High School with Krasnoff to be paid a flat fee of $550,000.00.

While both contracts set forth a flat fee to be paid to Krasnoff, additional compensation would be paid for additional services that were authorized or confirmed in writing by the School District.[2] As to the payment for any additional services, the contracts provided that such payment "shall be made monthly upon presentation of the Architect's statement of services rendered or expenses incurred." Paragraph 14.7.1 of the contracts provided for the payment for additional services by stating that, "[i]f the scope of the Project or the Architect's Services is changed materially, the amounts of compensation shall be equitably adjusted." The contracts further provided that, in the event of its termination, Krasnoff would be compensated for all services rendered up until the date of termination.

As apparently anticipated, the Fall 1987 election within the School District changed the composition of the School Board and resulted in a change in the School District's policy regarding the organization of the high school. Opting to have a centrally located high school, the new School Board terminated the School District's contracts with Krasnoff. Krasnoff then presented the School District with invoices requesting payment for fifteen different claims arising out of his performance of additional services, totalling $464,303.00. While agreeing to pay Krasnoff an equitable portion of his flat fee, the School District refused to pay the invoices, and Krasnoff initiated arbitration proceedings pursuant to the terms of the contracts.

During arbitration, Krasnoff requested $1,056,164.20, which represented not only the $464,303.00 for additional services, but also included liquidated damages for early termination of the contract, payment of a "diversion of base fee,"[3] and payment of accrued interest. In support of his claim, Krasnoff testified that James Capparell (Capparell), the former president of the School Board, had told him that all contact with the Board majority was to be through either himself or two other individuals. Krasnoff also testified that he had informed Capparell of the risk of additional services and costs that would arise from "fast tracking" the construction project, and that Capparell had acknowledged that risk and nevertheless instructed Krasnoff to continue with the project prior to obtaining the necessary approval from the state agencies. Krasnoff testified that, because of the re-designs that needed to be completed to comply with the State Art Commission's requests, he had to redo a substantial amount of work to both the initial plan and all other work performed thereafter. Krasnoff also testified that he was notified by three or four Board members during the final construction document phase of the project that he was to prepare a separate alternate bid package for on-site boilers to supplement the already designed steam co-generation plant, and that he needed to reduce the square footage of one of the school buildings. Krasnoff indi-

2. Paragraph 1.7 of the contract sets forth a list of twenty-one additional services, including:
    1.7.1 Providing analyses of the Owner's needs, and programming the requirements of the Project;
    1.7.6 Preparing documents of alternate, separate or sequential bids or providing extra services in connection with bidding, negotiation or construction prior to the completion of the Construction Documents Phase, when requested by the Owner; and
    1.7.12 Making revisions in Drawings, Specifications or other documents when such revisions are inconsistent with written approvals or instructions previously given, are required by the enactment or revision of codes, laws or regulations subsequent to the preparation of such documents or are due to other causes not solely within the control of the Architect.

3. When Krasnoff was hired by the School District, he replaced an architect who was previously working on the project. As part of the contract, Krasnoff was to divert $10,000.00 of his flat fee to compensate that architect for whatever work he had performed. This was the "diversion of base fee."

cated that the continuous changes that had to be made to the plan throughout the course of the contract resulted in fifteen different claims for additional services not covered by the basic fee.

The arbitrators concluded that, since Capparell acted as president of the Board and with the "firm support of a solid board majority" in directing Krasnoff to perform the additional work, his actions obligated the School District to compensate Krasnoff for that work. Citing to the facts that the School District received the benefits from Krasnoff's additional work and that Capparell was acting within the scope of his apparent authority as the president of the Board, the arbitrators concluded that the School District was bound by Capparell's actions. The arbitrators awarded Krasnoff $617,172.00 plus interest.

The School District then filed a petition to vacate the arbitration award that was denied by the trial court. Krasnoff then filed a petition to confirm the arbitration award and enter judgment that was granted by the trial court. The School District appealed to this Court, which vacated and remanded the matter based upon the trial court's application of an erroneous standard of review of the arbitrators' decision. This Court directed the trial court to apply the standard of review appropriate for statutory arbitration; i.e., whether the arbitrators' award was contrary to law, or whether, had the arbitrators' decision been that of a jury,

the court would have entered judgment notwithstanding the verdict. *See Hazleton Area School District v. Krasnoff*, 156 Pa.Cmwlth. 76, 626 A.2d 675 (1993), *petition for allowance of appeal denied*, 538 Pa. 677, 649 A.2d 677 (1994); *see* 42 Pa.C.S. § 7302(d)(2).[4]

On remand, the trial court reversed most of the arbitrators' award on several grounds. First, the trial court observed that both of the contracts between Krasnoff and the School District required Krasnoff to obtain written authorization for the additional services. Finding that Krasnoff did not have this written authorization for thirteen of his fifteen claims, the trial court denied him recovery for those claims. Second, the trial court also concluded that Krasnoff did not submit monthly invoices to the School District for any of the additional services. Because this was required by the contracts, the trial court held that Krasnoff was precluded from recovering for any of his claims. Finally, the trial court concluded that Krasnoff's provision of additional services at the direction of Capparell did not meet the requirements of Section 508 of the Public School Code,[5] requiring a vote of the majority of the School Board. After the trial court modified the arbitrators' award to $57,600.00 plus interest,[6] Krasnoff appeals to this Court.

Krasnoff contends that the trial court committed an error of law by concluding that the additional services had to be approved by the School Board in accordance

4. Judgment notwithstanding the verdict should be granted by the trial court only in clear cases where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Ludmer v. Nernberg*, 433 Pa.Superior Ct. 316, 640 A.2d 939 (1994), *petition for allowance of appeal denied*, 541 Pa. 652, 664 A.2d 542 (1995). On review of an order granting or denying judgment notwithstanding the verdict, this Court must determine whether there was sufficient competent evidence to sustain the verdict. *Nigro v. Remington Arms Co., Inc.*, 432 Pa.Superior Ct. 60, 637 A.2d 983 (1993), *petition for allowance of appeal denied*, 538 Pa. 673, 649 A.2d 674 (1994), *appeal dismissed*, 540 Pa. 49, 655 A.2d 505 (1995).

5. Section 508 of the Public School Code provides that:

The affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing

how each member voted, shall be required in order to date action on the following subjects:—

Creating or increasing any indebtedness.

Entering into contracts of any kind, including contracts for the purchase of fuel or any supplies, where the amount involved exceeds one hundred dollars ($100).
Failure to comply with the provisions of this section shall render such acts of the board of school directors void and unenforceable.
Act of March 10, 1949, P.L. 30, § 508, *as amended*, 24 P.S. § 5–508.

6. This amount represents liquidated damages and diversion of base fee, two matters that were not in dispute between the parties.

with the provisions of Section 508 of the Public School Code. Krasnoff argues that the requirements of Section 508 apply only when the School District is executing the initial contract for the provision of services. Because the contract had already been executed, Krasnoff contends that traditional rules of contract construction, not the requirements of Section 508, apply to his claims for additional work.

For a board of school directors to execute a contract on behalf of a school district, it must comply with the applicable provisions of the Public School Code setting forth the manner by which a contract may be executed. *School District of Philadelphia v. Framlau Corp.*, 15 Pa.Cmwlth. 621, 328 A.2d 866 (1974); *see also Yoder v. School District of Luzerne Township*, 399 Pa. 425, 160 A.2d 419 (1960). Section 508 of the Public School Code mandates that a school district's indebtedness can only be increased under a contract when there is an affirmative vote of a majority of the school board members that is reflected in the minutes or record showing how each member voted. 24 P.S. § 5–508. Not only do the Section 508 mandates apply when the contract is first executed, but it also applies to any subsequent modifications of a contract that would increase the school district's indebtedness under that contract. *See Yoder, supra.* When the original contract with the school district is modified, there must be approval by an affirmative vote of the majority of the school board. *See Matevish v. School District of Borough of Ramey*, 167 Pa.Superior Ct. 313, 74 A.2d 797 (1950). Because the provision of additional services by Krasnoff constitutes a modification of the contracts for architectural services and would increase the School District's indebtedness thereunder, Section 508 does apply. The approval of the majority of the School Board was required in order for Krasnoff's claims to be binding upon the School District.

■ Even if Section 508 does apply to his claims for additional services, Krasnoff then argues that there is solid proof that the majority of the School Board approved his performance of the additional services. Krasnoff argues that, as found by the arbitrators, Capparell's actions as the president of the School Board were undertaken "with the firm support of a solid board majority." This, Krasnoff argues, constitutes solid proof of approval by a majority of the School Board.

■ Even though Section 508 requires a record of the affirmative vote of a majority of the school board approving a contract, a party claiming to have a contract with a school district will not automatically be precluded from enforcing it simply because there are no minutes or a record reflecting that vote. *Mullen v. Board of School Directors of Dubois Area School District*, 436 Pa. 211, 259 A.2d 877 (1969).[7] If the party can produce "solid proof" of the majority's approval of the contract, then it may maintain a claim for damages under that contract. *Mullen, supra; Grippo v. Dunmore School Board*, 27 Pa.Cmwlth. 507, 365 A.2d 678 (1976). If the party fails to satisfy this burden of proof, there can be no recovery against the school district, even on claims of *quantum meruit. See Price v. School District of Borough of Taylor*, 157 Pa.Superior Ct. 188, 42 A.2d 99 (1945).

■ In the present case, Krasnoff has not adduced any proof that the majority of the School Board approved his performance of additional services under the contracts. In fact, the evidence established that Krasnoff received his "authorization" to perform the

7. This is not to say, however, that a formal affirmative vote is not a prerequisite to the formation of a contract. Instead, *Mullen* stands for the proposition of law that a school district cannot avoid a contractual obligation merely by asserting noncompliance with the Public School Code where the noncompliance is attributable to the School Board. To avoid inequities, that case only eliminated the strict procedural requirement of producing a record or minutes containing a formal vote, permitting a contractor to establish a valid contract by proving majority approval of that contract. *Grippo v. Dunmore School Board*, 27 Pa.Cmwlth. 507, 365 A.2d 678 (1976). Although the burden of ensuring compliance with Section 508 remains with the school board, thus precluding a school district from raising noncompliance as a defense, the burden rests upon the contractor to provide solid proof of majority approval. *Rudolph v. Albert Gallatin School District*, 60 Pa.Cmwlth. 456, 431 A.2d 1171 (1981).

extra work through occasional meetings with a few School Board members. Irrespective of their conduct, the individual members of the School Board could not have bound the School District absent majority approval. *See School District of Philadelphia v. Framlau Corp.*, 15 Pa.Cmwlth. 621, 328 A.2d 866 (1974). Moreover, the only individual who approved Krasnoff's work on a continuous basis was Capparell, and despite Krasnoff's assertion that Capparell had indicated that he represented the majority of the School Board, there is no evidence of record to establish that a majority of the School Board did, in fact, authorize Capparell to act on its behalf or approve the additional services. *See Matevish, supra* (holding that an individual member of the school board, even if he or she had the apparent authority to act, could not bind the school district if his or her actions were not authorized by a majority of the school board). Applying the standard of review applicable to statutory arbitration, because there is no evidence establishing that

the majority of the School Board approved the additional services, Krasnoff's claims would not have been submitted to a jury, and had the arbitrators' decision been that of a jury, there would be insufficient competent evidence to support it.[8]

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 11th day of March, 1996, the order of the Court of Common Pleas of Philadelphia County at No. 1344 October Term, 1991, dated January 13, 1995, is affirmed.

---

8. In light of our holding on this issue, we need not address Krasnoff's other challenges to the trial court's determination.