PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

─────

No. 09-3890

─────

WAYNE MOVING & STORAGE OF NEW JERSEY, INC.

v.

THE SCHOOL DISTRICT OF PHILADELPHIA;
THE SCHOOL REFORM COMMISSION,
Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-06-cv-00676)
District Judge:  Honorable Lawrence F. Stengel

─────

Argued September 14, 2010
Before:  SLOVITER, FISHER and GARTH, *Circuit Judges*.

(Filed: October 28, 2010)

Joseph Anclien
Carl A. Solano (Argued)
Schnader Harrison Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA  19103

Miles H. Shore
School District of Philadelphia
Office of General Counsel
440 North Broad Street, Suite 313
Philadelphia, PA 19130-4015
        *Counsel for Appellants*

Wei-Wei Chiu
James P. Golden (Argued)
Shelley R. Goldner
Anthony V. Mannino, III
Jane C. Silver
Hamburg & Golden
1601 Market Street, Suite 3310
Philadelphia, PA 19103
        *Counsel for Appellee*

Stuart L. Knade
Pennsylvania School Boards Association
400 Bent Creek Boulevard
P.O. Box 2042
Mechanicsburg, PA 17055
        *Counsel for Amicus Appellant,*
        *Pennsylvania School Boards Association*

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

This diversity action requires us to decide under Pennsylvania law whether a subcontractor may recover against a school district for a claim of unjust enrichment. The case involves a dispute over unpaid services between the subcontractor Wayne Moving & Storage of New Jersey ("Wayne Moving") and the appellants the School District of Philadelphia and the School Reform Commission (collectively, "School District"). Wayne Moving sued the School District under a theory of unjust enrichment for unpaid moving services. The United States District Court for the Eastern District of Pennsylvania granted Wayne Moving's motion for summary judgment and awarded it $830,071.18 plus interest. On appeal, the School District contends that Wayne Moving's claim of unjust enrichment is barred by Section 508 of the Pennsylvania Public School Code, which applies to "contracts of any kind." 24 Pa. Stat. Ann. § 5-508. Appellants maintain that "contracts of any kind" include those contracts implied by courts in unjust enrichment claims. We agree and hold that those acts of the School District not in compliance with the provisions of Section 508 are rendered "void and unenforceable," *id.*, and cannot bind the School District under an implied contract of unjust enrichment. We further hold that the School District is not equitably estopped from relying on Section 508.

For the following reasons, we conclude that the District Court's denial of the School District's motion for summary judgment was in error. Accordingly, we will reverse the District Court's grant of summary judgment in

favor of Wayne Moving and remand for entry of summary judgment for the School District.

## I.

### A.

Wayne Moving subcontracted with Facility Strategies, a professional relocation consultant, to provide moving services for the School District. The moving project dates back to 2002 when Frank Siefert, the Special Assistant to the Commission, suggested consolidating the School District's five administrative office buildings into one central location. On August 13, 2002, the School Reform Commission approved the purchase of 440 North Broad Street to serve as the new School District headquarters. On June 16, 2004, the Commission authorized the School District to enter into a contract for moving services in an amount not to exceed $1.4 million.

Facility Strategies and Wayne Moving submitted a proposal for just under the $1.4 million authorized amount. On September 1, 2004, Facility Strategies entered into a subcontract agreement with Wayne Moving for an amount not to exceed $840,115.68, and on September 24, 2004, Facility Strategies and the School District entered into a contract for an amount not to exceed $1,396,865.68.

The move into 440 North Broad Street encountered numerous difficulties involving non-functioning elevators, unanticipated work, and delays due to the School District's disputes with a third party. The move was scheduled to begin

in January of 2005, and Facility Strategies and Wayne Moving contracted to complete the move by September 30, 2005. But it did not begin until April 2005 and most of the moving occurred in the final month before the deadline.

As a result of the delays, the project incurred additional expenses. Sallyann Ferullo, President of Facility Strategies, inquired of Frank Siefert at the School District as to what should be done about the additional expenses. Siefert told her, according to Ferullo's testimony, "[D]on't worry, just document it. As long as we have documentation we'll take care of it at the end." *Wayne Moving & Storage of N.J. v. School Dist. of Phila.*, No. 06-0676, 2008 WL 65611, at *1 (E.D. Pa. Jan. 3, 2008). Ferullo then inquired as to whether Facility Strategies and Wayne Moving should stop working. Siefert, according to Ferullo's testimony, responded, "Oh no. . . . You got to finish. We got to finish." *Id*. Ferullo stated that she would "get it done. Whatever it takes." *Id*.

Two invoices and an extra work order are at issue. Ferullo submitted an extra work order to the School District on September 20, 2005 for $384,100. Siefert approved the extra work order and, according to the School District, was under the impression that: the project was still within the $1.4 million budget; the work order only included cost estimates; and the order was approved only on a not-to-exceed basis. The District Court did not find otherwise. *Id.* at *8.

Facility Strategies submitted an invoice on October 26, 2005 for part of the work performed in September. In a cover letter, Ferullo informed Siefert that Facility Strategies

5

received additional invoices from Wayne Moving and that the project was over the contracted amount by $158,000. Ferullo also stated that she had yet to receive invoices from the last week of September, "the most intensive week of work." *Id.* at \*2. She went on to note that "[o]nce all of the invoices have been received, it is my understanding that you will need to go before the [School Reform Commission] for the additional funding." *Id.* But Ferullo expressed confidence that the remaining expenses "will come within the projections that we discussed in the itemized Extra Work Order." *Id.* The School District paid Facility Strategies after receiving the invoice, and Facility Strategies subsequently paid Wayne Moving the full $840,116 contracted amount.

Facility Strategies submitted a final invoice to the School District on December 20, 2005 for $834,201.18, which included $830,071.18 for the extra work performed by Wayne Moving. Wayne Moving argued that the additional expenses were due to the expanded scope of work and unanticipated impediments. The District Court agreed and found that the "$830,071.00 in extra work was attributed to the compressed schedule, inoperable or inadequate elevators, and an increased scope of the work to be performed." *Wayne Moving & Storage of N.J. v. School Dist. of Phila.*, No. 06-0676, 2009 WL 123781, at \*1 (E.D. Pa. Jan. 14, 2009). Regardless, the School District refused to pay because the claimed amount was in excess of the $1.4 million authorized by the School Reform Commission.

Wayne Moving did not submit additional written demands for payment, nor did it file suit against Facility

6

Strategies. Wayne Moving, however, did file suit against the School District.

**B.**

On February 14, 2006, Wayne Moving filed this lawsuit against the School District in the United States District Court for the Eastern District of Pennsylvania, asserting claims for unjust enrichment for unpaid moving services in the amount of $830,071.18. On August 15, 2006, the District Court denied the School District's motion to dismiss the complaint. Both parties filed motions for summary judgment, and on January 3, 2008, the District Court granted Wayne Moving's motion.

The School District argued that Wayne Moving's claim should be denied for three reasons: (1) the prime contract between the School District and Facility Strategies and the Request for Proposal signed by Wayne Moving independently bar Wayne Moving's claim; (2) Section 508 prohibits unauthorized payment to Wayne Moving; and (3) privity of contract exists between the School District and Wayne Moving, preventing Wayne Moving from bringing an unjust enrichment claim, and the unjust enrichment claim rests on disputed facts. The District Court held that the provisions of the prime contract were not enforceable against Wayne Moving because it was not a party to the contract between the School District and Facility Strategies. With respect to the second argument, the court held that the School District was equitably estopped from relying on Section 508, reasoning that Siefert misleadingly told Ferullo to order Wayne Moving to perform the extra work. Finally, the court

7

held that Wayne Moving and the School District were not in privity of contract and that the elements of unjust enrichment were met. "Under these circumstances," the District Court stated, "it would be unconscionable and grossly inequitable for the defendants to retain the benefits of additional moving services without paying for them." *Wayne Moving*, 2008 WL 65611, at *9. The District Court entered a judgment of $1,003,908.33 ($830,071.18 in unpaid moving services plus $173,837.33 in interest) in favor of Wayne Moving.

On October 2, 2009, the School District timely appealed, and it makes the same three arguments on appeal. We only reach the second issue.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332(a) because the parties' citizenship was completely diverse and the amount in controversy exceeded $75,000. We have jurisdiction under 29 U.S.C. § 1291. We review a decision resolving a motion for summary judgment de novo. *Startzell v. City of Philadelphia*, 533 F.3d 183, 192 (3d Cir. 2008). A party is entitled to summary judgment when it demonstrates that there is no genuine issue of material fact and that the evidence establishes its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In reviewing a motion for summary judgment, we consider all evidence in the light most favorable to the party opposing the motion. *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995).

## III.

We first consider whether Section 508 of the Pennsylvania Public School Code bars Wayne Moving's ability to recover from the School District. Section 508 states:

> "The affirmative vote of a majority of all members of the board of school directors in every district, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects: --
>
>> . . . Creating or increasing any indebtedness. . . .
>>
>> Entering into contracts of any kind . . . where the amount involved exceeds one hundred dollars ($100). . . .
>
> Failure to comply with the provisions of this section shall render such acts of the board of school directors void and unenforcible."

24 Pa. Stat. Ann. § 5-508. This provision also applies to "any subsequent modifications of a contract that would increase the school district's indebtedness under that contract." *Hazleton Area School Dist. v. Krasnoff*, 672 A.2d 858, 862 (Pa. Commw. Ct. 1996). If Section 508 applies, any approval that Siefert may have given for additional work is rendered "void and unenforcible."

9

To determine whether Section 508 applies, we must examine the status of the relationship between Wayne Moving and the School District. Wayne Moving is not arguing that the School District is contractually bound to pay for its services. In that situation, Section 508 would apply directly. Instead, Wayne Moving claims that no contractual relationship exists between them and that as a matter of equity the School District must pay for its services. For purposes of our analysis, we assume that there is no express contract between Wayne Moving and the School District.[1] The real issue, then, is whether Section 508 applies to implied contracts in cases of unjust enrichment.

Before proceeding, we must consider the role of the federal courts in diversity actions. "A federal court under

---

[1] If, on the other hand, there is a contract between Wayne Moving and the School District, then Wayne Moving cannot bring a claim of unjust enrichment. In *Wilson Area School District v. Skepton*, the Supreme Court of Pennsylvania held that parties to a contract "are not entitled to the remedies available under a judicially-imposed quasi[-]contract [i.e., the parties are not entitled to restitution based upon the doctrine of unjust enrichment] because the terms of their agreement (express and implied) define their respective rights, duties, and expectations." 895 A.2d 1250, 1254 (Pa. 2006) (modifications in original) (quoting *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 620 (E.D. Pa. 2003)); *see also In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1230 (3d Cir. 1987) (holding that a party cannot assert a claim of unjust enrichment "if there is an express contract on the same subject").

*Erie* is bound to follow state law as announced by the highest state court." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 253 (3d Cir. 2010) (quoting *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007)). The Supreme Court of Pennsylvania has yet to consider whether Section 508 applies to implied contracts. In this instance, "[w]hen the state's highest court has not addressed the precise question presented, [we] must predict how the state's highest court would resolve the issue." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 n.15 (3d Cir. 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "[W]e must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004) (quotation marks and citation omitted). Moreover,

> "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

*Sheridan*, 609 F.3d at 254 (quotation marks and citations omitted).

We begin our analysis with intermediate state court judgments and grant them "significant weight in the absence

11

of an indication that the highest state court would rule otherwise." *Orson*, 79 F.3d at 1373 n.15 (quoting *C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967)). In *Price v. School District of Borough of Taylor*, the Superior Court of Pennsylvania held that a school board treasurer had no implied claim to compensation because he was not properly appointed by the school board. 42 A.2d 99, 102 (Pa. Super. Ct. 1945). The court rested its analysis on Section 508:

> "This section is mandatory and there must be strict compliance with its provisions before any rights can be acquired against a school district. . . . If the statutory methods for the authorization of expenditures are not pursued, a deserving plaintiff can have no recovery, even on claims of *quantum meruit*, for the statute excludes all equities and implied liabilities."

*Id.* Likewise, *In re Borough of Sykesville* involved plaintiffs who sued a school district for unpaid work under an implied contract. 91 Pa. Super. 335 (Pa. Super. Ct. 1927). The Superior Court of Pennsylvania held that the contractors could not recover due to the statutory requirement that all contracts must be authorized by the school board. *Id.* at 341. "Regular official action, evidenced by official minutes, is what the statute requires to ground such an action as the present, and because it is a statutory requisition, all equities and implied liabilities are excluded." *Id.* (quoting *Cascade School Dist. v. Lewis School Dist.*, 43 Pa. 318, 321 (Pa. 1862) (holding that a statute requiring school board approval for the enforcement of a contractual arrangement between school districts barred implied contracts and liabilities)).

12

Pennsylvania courts follow the general rule that the Pennsylvania Commonwealth Court articulated in *Hazleton*:

> "If the party can produce 'solid proof' of the majority's approval of the contract, then it may maintain a claim for damages under that contract. . . . If the party fails to satisfy this burden of proof, there can be no recovery against the school district, even on claims of *quantum meruit*."

672 A.2d at 862 (citations omitted). While not reaching the issue of whether Section 508 applies to implied contracts, the Supreme Court of Pennsylvania has interpreted the requirements of Section 508 as mandatory. "To permit contracts to be entered into and expenditures made without compliance with the provisions of the act would defeat every object the legislature had in mind in inserting them." *Yoder v. Luzerne Twp. Sch. Dist.*, 160 A.2d 419, 421 (Pa. 1960) (holding that Section 508 barred a claim for expenses in excess of the authorized contract, even though they were incurred at the direction of school directors). We therefore conclude that the Supreme Court of Pennsylvania would apply Section 508 to bar claims arising from implied contracts.

This interpretation is consistent with the plain meaning and policy of the statute. Section 508 applies to "contracts of any kind." 24 Pa. Stat. Ann. § 5-508. This, we find, includes contracts implied by law. Since the statute's adoption, the Supreme Court of Pennsylvania has maintained a strict interpretation, which serves to preserve precious money

13

reserved for public education. Finding that Section 508 covers implied contracts conforms with the general policy of the statute as articulated by the Supreme Court of Pennsylvania:

> "This statute is a valuable one, intended to compel the expression of each individual member of the school board on a subject all-important in the public education, and this for the very purpose of preventing jobbery, and the exercise of a one-man power, in the conduct of our common schools; we are, therefore, not inclined to permit the abrogation of its force and efficiency by a weak construction designed to meet a particular case."

*Mullen v. Bd. of Sch. Dirs. of DuBois Area Sch. Dist.*, 259 A.2d 877, 880 (Pa. 1969) (quotation marks and citation omitted). We may safely predict that the Supreme Court of Pennsylvania would apply Section 508 to bar unjust enrichment claims, for we are unaware of any "other persuasive data that the highest court of the state would decide otherwise." *Sheridan*, 609 F.3d at 254 (citations omitted).

Finding that Section 508 applies to claims for unjust enrichment, we must apply it to the facts. Section 508 requires school board approval for any services valued above $100 or "any subsequent modifications of a contract that would increase the school district's indebtedness under [the] contract." *Hazleton*, 672 A.2d at 862. It is undisputed that the School Reform Commission did not authorize the

14

$830,071.68 claimed by Wayne Moving.  Therefore, Wayne Moving's claim of unjust enrichment is barred by Section 508.

## IV.

The District Court held that even if Section 508 applies to implied contracts, the School District is equitably estopped from relying upon it.  Under Pennsylvania law, equitable estoppel consists of three elements:  "1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel." *Chester Extended Care Ctr. v. Pennsylvania Dep't of Pub. Welfare*, 586 A.2d 379, 382 (Pa. 1991).  We disagree with the District Court and hold that Wayne Moving has failed to demonstrate the necessary elements of equitable estoppel.

We must first determine whether equitable estoppel can be applied against the Commonwealth of Pennsylvania or its subdivisions.  The District Court correctly stated that equitable estoppel can be so applied, even where doing so would violate a statute or ordinance, such as Section 508. *Wayne Moving*, 2008 WL 65611, at *8; *see*, *e.g.*, *Chester Extended Care Ctr.*, 586 A.2d at 382 ("The doctrine of estoppel is an equitable remedy that may be asserted against the government in this jurisdiction.").  But "[i]t is also the law of Pennsylvania that the Commonwealth or its subdivisions and instrumentalities cannot be estopped 'by the acts of its agents and employees if those acts are outside the agent's

15

powers, in violation of positive law, or acts which require legislative or executive action.'" *Cent. Storage & Transfer Co. v. Kaplan*, 410 A.2d 292, 294 (Pa. 1980) (quoting *Kellams v. Pub. Sch. Emp. Ret. Bd.*, 403 A.2d 1315, 1318 (Pa. 1979)). The Supreme Court of Pennsylvania resolved the tension between these principles in holding that "[a]lthough it is the general rule that estoppel against the government will not lie where the acts of its agents are in violation of positive law, . . . this rule cannot be slavishly applied where doing so would result in a fundamental injustice." *Chester Extended Care Ctr.*, 586 A.2d at 383 (citation omitted).

There is no evidence in the record that the School District misled Wayne Moving, nor is there "unambiguous proof" that Wayne Moving reasonably relied upon or was even notified of any misrepresentations of the School District. Moreover, the requirement that actions of the School District must rise to the level of a "fundamental injustice" imposes a demanding threshold that has not been met. Instead, the general rule of Pennsylvania should be applied. Wayne Moving cannot assert estoppel against the School District, a subdivision of the Commonwealth, by the acts of its agent Frank Siefert because those acts require legislative or executive action and do not rise to the level of a fundamental injustice.

We start with the record. The closest Siefert comes to making a misleading statement is found in Ferullo's testimony, where she stated that Siefert told Facility Strategies, "don't worry, just document it. As long as we have documentation we'll take care of it at the end." *Wayne Moving*, 2008 WL 65611, at *1. Addressing Facility

16

Strategies' question of whether they should stop working on the project, Siefert then allegedly told Ferullo, "Oh no. . . . You got to finish. We got to finish." *Id.* Even these statements, though, are ambiguous. If this was said with the understanding that all expenses would be within the authorized amount, then Siefert is not misleading Facility Strategies or Wayne Moving into believing that they would receive payment.

Wayne Moving may also claim that Siefert's silence was misleading. Siefert failed to respond to Ferullo's statement in her letter of October 26, 2005 that "[o]nce all of the invoices have been received, it is my understanding that you will need to go before the [School Reform Commission] for the additional funding." Instead, Siefert waited until receiving the final invoice before informing Facility Strategies that he would not seek approval for the additional, unauthorized payments. This, however, fails to meet the threshold of a "fundamental injustice." Siefert claims that he was under the impression that the project would be within the $1.4 million authorized amount until he received the last invoice. At this point in our analysis, it is informative to look at Pennsylvania case law where courts have held that the Commonwealth committed a fundamental injustice in misleading the plaintiff and inducing reliance.

Findings of fundamental injustice are generally limited to cases "involving unusual situations" and particularly egregious behavior. *Carroll v. City of Phila., Bd. of Pensions & Ret. Mun. Pensions Fund*, 735 A.2d 141, 146 (Pa. Commw. Ct. 1999). In *Chester*, a State agency misled a nursing home facility into believing that it was eligible for the federal

17

Medical Assistance program. 586 A.2d at 382. The State agency "continued to reimburse appellant for the skilled nursing care of its Medical Assistance patients," "never made any effort to remove Medical Assistance patients," "continued to send additional Medical Assistance patients to appellant's facilities," and "never informed appellant that [the federal government] considered its termination . . . irrevocable." *Id.* at 382. Unlike *Chester*, where the Supreme Court of Pennsylvania held that there was "no dispute that [the State agency] mislead appellant," *id.*, the record before us fails to indicate that Siefert committed a fundamental injustice against Wayne Moving.

An additional difficulty facing Wayne Moving's claim is that none of the statements made by Siefert were directed towards Wayne Moving, and there is no evidence that Wayne Moving was informed of Siefert's statements. In *Chester* and *Cameron Manor, Inc. v. Department of Public Welfare*, the government's misleading communications were made directly to the plaintiff. 586 A.2d at 382; 681 A.2d 836, 841 (Pa. Commw. Ct. 1986) (holding that the plaintiff was "misled by several assurances" from the government that directly induced reasonable reliance). Moreover, the communications induced reasonable reliance, creating "unambiguous proof of reasonable reliance upon the misrepresentation." *Id.* Here, the School Board communicated to Facility Strategies, which was fully informed of the authorization requirement.

Facility Strategies, in its independent judgment, decided to proceed with the project, and only then was Wayne Moving induced to rely upon a belief that it would be paid for its services. At that point, Wayne Moving was relying upon

18

the statements made by Facility Strategies, which interpreted its obligations under the prime contract and calculated the likelihood of payment. The intervening cause and independent judgment of Facility Strategies therefore distinguish this case from those where Pennsylvania courts have found a fundamental injustice with unambiguous proof of reasonable reliance. While Wayne Moving had no direct conversations with Siefert, it could not rely upon the statements or representations made by Siefert to Facility Strategies. Wayne Moving should have known that Siefert did not have the power to approve expenditures beyond those approved by the Board. In fact, Stanley MacHugh, the business manager of Wayne Moving, testified that he understood that extra work orders would have to be approved by the School Board and that Facility Strategies notified him of this fact at the time of the extra work order. (App. A855.) Wayne Moving therefore should have been aware that private companies that do business with the School District "do so at their own peril" and have an affirmative responsibility to "inquire into the powers of the [School District] and its agents to enter into any contracts." *City of Scranton v. Heffler, Radetich & Saitta, LLP*, 871 A.2d 875, 879 (Pa. Commw. Ct. 2005), *appeal denied*, 897 A.2d 1184 (Pa. 2006). We deny equitable estoppel because the School District did not mislead by "words, conduct, or silence" and there is no "unambiguous proof of [Wayne Moving's] reasonable reliance." *Chester Extended Care Ctr.*, 586 A.2d at 382. We need not reach the issue of whether Wayne Moving lacked a duty to inquire, the third element of equitable estoppel.

Holding that equitable estoppel does not apply to the facts of this case is in conformity with the general position of

19

Pennsylvania courts with respect to Section 508. In a case with similar facts involving a contractor who was induced to perform extra work and relied upon assurances from government officials that equitable compensation would be provided, the Commonwealth Court of Pennsylvania held that "individual members of the School Board could not have bound the School District absent majority approval." *Hazleton*, 672 A.2d at 863. Pennsylvania courts have abided by the general rule derived from Section 508 that "[a]ction by the board is indispensable, and no liability can be imposed upon a school district without it." *Matevish v. Sch. Dist. of Borough of Ramey*, 74 A.2d 797, 800 (Pa. Super. Ct. 1950) (holding that a school board official's modification of contract was uneforceable because it was not approved by a majority of the school board). An early case involving the application of what is today Section 508 articulates the position of Pennsylvania courts. In *Waltman v. Albany Township School District*, an unsuspecting school teacher was induced into working without a valid contract. The Superior Court of Pennsylvania stated that they "appreciate the hardship and disappointment that the plaintiff may experience by reason of this decision . . . but we cannot allow or permit, the hardships of an individual case to override and overcome the plain requirements of the act of assembly." 64 Pa. Super. 458, 467-68 (Pa. Super. Ct. 1915). While Wayne Moving is certainly a sympathetic plaintiff who performed valuable services for the School District, Wayne Moving cannot receive compensation for its services because the additional expenses were not authorized by a majority of the School Board, as required by Section 508.

**V.**

The School District also argues that Wayne Moving's claim for unjust enrichment is barred by contract provisions found in the prime contract between the School District and Facility Strategies and that the elements of unjust enrichment have not been sufficiently established. Because we dispose of this case on the grounds that Section 508 of the Pennsylvania Public School Code bars Wayne Moving's claim for unjust enrichment, we do not reach the School District's other arguments for reversal.[2]

We conclude that the District Court's grant of Wayne Moving's motion for summary judgment and denial of the School District's motion for summary judgment were in error. We direct entry of summary judgment for the School District.

---

[2] The School District argued that Wayne Moving's unjust enrichment claim was separately barred by the terms of the subcontract between Wayne Moving and Facility Strategies. Specifically, the subcontract contained an incorporation clause that, the School District argued, incorporated the "Waiver Provisions" contained in the primary Relocation Contract between Facility Strategies and the School District. These waiver provisions prohibited all legal claims against the School District arising from the contracted-for services. Because we determine that Wayne Moving's unjust enrichment claim is barred by Section 508, we need not address nor decide whether the subcontract incorporated the prime contract between the School District and Facility Strategies or whether Wayne Moving's claim is separately barred by the relevant contractual provisions.

Accordingly, we will reverse and remand for entry of summary judgment for the School District.