GREENAWAY, JR., Circuit Judge,
dissenting
In this case, we are required to interpret two New Jersey statutes: the Truth-in-Consumer Contract, Warranty, and Notice Act (N.J. Stat. Ann. §§ 56:12-14 to 12-18) (“TCCWNA”)[1] and the Consumer Fraud Act (N.J. Stat. Ann. §§ 56:8-1 to 8-20) (“CFA”).[2] Both of these statutes evidence New Jersey’s long tradition of strong consumer protection laws. Unfortunately, the Supreme Court of New Jersey fails to give us clear guidance on how it would rule when faced with a TCCWNA claim based on an omission of information that violates the CFA. As a consequence, my colleagues in the Majority have chosen to predict how the Supreme Court might rule. In my view, ,the Majority erroneously conflates the pleading requirements of the two statutes, effectively undermining TCCWNA’s impact. In the first instance, I believe we should certify certain questions to the Supreme Court; however, in the absence of seeking such guidance, I believe that the Supreme Court of New Jersey would interpret the clear language of TCWWNA to allow recovery in situations, like the one presented here, where the violation of the underlying statute allows for an omission *138 of information. As such, I find I must dissent.[3]
Watkins argues that DineEquity has violated both TCWWNA and the CFA. First, DineEquity violated the CFA by failing to publish prices for beverages on the menus in its restaurants. Second, DineEquity violated TCCWNA based on the violation of the CFA. That is, the covered writing[4] (the menu) includes a provision (offering beverages for sale without prices) that is a violation of a clearly established legal right of a consumer or a clearly established legal responsibility of a seller created by the CFA. Instead of viewing the omission of beverages prices as a violation of the CFA, as alleged by Watkins, the District Court and the Majority conclude that an omission is not covered by TCCWNA. I find the Majority’s result — that a menu which includes a violation of the CFA cannot form the basis for a violation of TCWWNA — to defy the clear meaning of the statute, the intent of the New Jersey legislature in enacting New Jersey’s consumer protection laws, and existing New Jersey case law interpreting and applying these statutes.
Recently, the Supreme Court of New Jersey “review[ed] the relevant canons of statutory construction,” noting that “[t] he objective of that task ‘is to discern and effectuate the intent of the Legislature.’ ” Shelton v. Restaurant.com, 214 N.J. 419, 70 A.3d 544, 550 (2013) (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 46 A.3d 1262, 1269 (2012)). That court stated
Our starting point is the plain language of the statute to which we accord the ordinary meaning of the words used by the Legislature. If the Legislature’s intent is clear from the statutory language and its context with related provisions, we apply the law as written. We are also guided by the legislative objectives sought to be achieved by the statute. We turn to extrinsic tools to discern legislative intent, however, only when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with a general statutory scheme.
Id. (internal citations omitted).
Applying those principles here, I agree with the District Court and the Majority that a menu is a covered writing pursuant to TCWWNA. I also agree with the Majority that “TCCWNA does not establish consumer rights or seller responsibilities. Rather, the statute bolsters rights and responsibilities established by other laws.” (Majority at 134.)[5]
I part company with my colleagues on the question of whether an omission of information which violates the CFA can form the basis of TCCWNA liability. (Majority at 135 (questioning whether ‘Defendants’ alleged violation of [the CFA] can serve as the predicate for a claim under TCCWNA, despite the fact that the purported violation stems from an omission, rather than an inclusion of information)). TCCWNA plainly creates liability for a *139 defendant who offers a covered writing to a consumer “which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller.” N.J. Stat. Ann. § 56:12-15. Nowhere does TCWWNA limit that language with the caveat that the underlying statutory violation cannot be an omission of information. Here, the CFA requires the listing of prices for items offered for sale. That is, if a price is omitted from an offer to sell an item, the seller violates the CFA.
The state courts in New Jersey have long recognized that an omission of information can form the basis of a claim under the CFA. See, e.g., Cox v. Sears Roebuck & Co., 138 N.J. 2, 647 A.2d 454, 462 (1994) (“Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations.”); Talalai v. Cooper Tire & Rubber Co., 360 N.J.Super. 547, 823 A.2d 888, 893 (N.J.Super.Ct.App.Div.2001) (“ ‘Proof of an affirmative misrepresentation of a fact material to the transaction is sufficient to establish a violation of the Act. The same applies to omissions. A practice can violate the CFA even though no one was misled or deceived as a result.’ ” (quoting Byrne v. Weichert Realtors, 290 N.J.Super. 126, 675 A.2d 235, 240 (N.J.Super.Ct.App.Div.1996))).
Nothing in the language of the CFA or in the cases interpreting it limit its scope to only included language. The omission of prices from DineEquity’s menus violates the CFA. Rather than presenting a TCCWNA claim based on an omission as stated by the Majority, Watkins’s claim rests on an omission that violates the CFA. The menus, therefore, include a violation of a clearly established state law (the CFA) and thus may also violate TCWWNA. I believe the Supreme Court of New Jersey would reach the same conclusion.
In analyzing state law, we turn first to decisions from the state’s highest court. Wayne Moving & Storage of New Jersey, Inc. v. School District of Philadelphia, 625 F.3d 148, 154 (3d Cir.2010). The Supreme Court of New Jersey has not spoken on the exact issue before us — whether a failure to print prices on a menu violates the CFA, thus establishing a violation of TCWWNA. However, that Court has made clear that a violation of the CFA can form the basis for a violation of TCWWNA. Manahawkin Convalescent v. O’Neill, 217 N.J. 99, 85 A.3d 947, 963 (2014) (finding no violation of TCCWNA absent a violation of the CFA or any other law); Bosland v. Warnock Dodge, Inc., 396 N.J.Super. 267, 933 A.2d 942 (N.J.Super.Ct.App.Div.2009).
Lacking guidance from the Supreme Court of New Jersey,[6]1 turn to a decision from the Appellate Division of the-New Jersey Superior Court: Dugan v. TGI Friday’s, Inc., 2011 WL 5041391 (NJ.Super.Ct.App.Div. Oct. 25, 2011). Albeit not binding precedent, I nonetheless find the reasoning in Dugan instructive.[7] As we have observed, '
*140 “Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.” ... Additionally, “[wjhen a state’s highest court denies review, the policy reasons for following an intermediate court decision (absent compelling evidence to the contrary) are strengthened.”
Sheridan v. NGK Metals Corp,, 609 F.3d 289, 254 (3d Cir.2010) (quoting Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 174 & n. 7 (3d Cir.2005)).
The plaintiff in Dugan made two claims — one under the CFA and the other under TCCWNA. The facts are simple: plaintiff had a beer at the bar at a TGI Friday’s. The beer at the bar cost $2.00. Plaintiff then went to a table, where she ordered the same kind of beer. However, the menu at the table did not list any prices for beer, mixed drinks or soft drinks. Upon receiving the bill, plaintiff learned the beer at the table cost $3.59. Relevant to the issues presented in the present case, the Appellate Division concluded (1) the CFA (NJ.Stat.Ann. § 56:8-2.5) required disclosure of the beer prices on the menu, (2) plaintiff was able to demonstrate an ascertainable loss (one of the elements of establishing a private cause of action under the CFA)[8] and, most importantly, (3) “the affirmative act that may trigger the TCCWNA is the offer encompassed by TGIF’s menu.”[9] Dugan, 2011 WL 5041391 at * 8.
The District Court and the Majority distinguish Dugan from the present case by ignoring the part of the decision discussing TCCWNA and focusing instead on the part of the decision that established a private cause of action under the CFA; namely, the “secret switch” of the beer prices. (Majority at 136-37.) I agree with my colleagues that Watkins would not be able to establish a private cause of action under the CFA since she has failed to plead any facts that demonstrate an ascertainable loss. However, that is not the question before us.
Instead of parsing Watkins’s complaint in an effort to identify a private cause of action under the CFA — a claim she has dropped — we are asked to determine whether her complaint states a claim under TCWWNA. The District Court and the Majority never address the reasoning in Dugan that applies to a claim made under TCWWNA: “the affirmative act that may trigger the TCCWNA is the offer encompassed by TGIF’s menu.” Dugan, 2011 WL 5041391 at * 8. Here, as in Dugan, the menu includes an offer to sell beverages. That offer to sell beverages fails to provide pricing information as required by the CFA. Applying the Appellate Division’s reasoning here, by alleging DineEquity’s menus include a violation of the CFA by failing to print beverage prices, Watkins has pled sufficient facts to demonstrate an affirmative act that triggers liability pursuant to TCWWNA.
*141 The significant difference between the case before us and Dugan is the failure to plead a private cause of action under the CFA. Watkins has withdrawn her claim under the CFA. However, violations of the CFA can occur absent a plaintiff being able to show an ascertainable loss in a private cause of action.
For example, if a plaintiff fails to establish an ascertainable loss, he or she can nonetheless demonstrate a violation of the CFA and, by doing so, recover attorney’s fees and costs. Weinberg v. Sprint Corp., 173 N.J. 233, 801 A.2d 281, 283 (2002) (“We conclude that to have standing under the Act a private party must plead a claim of ascertainable loss that is capable of surviving a motion for summary judgment. In such a case, even if the factfinder ultimately determines that the loss has not been proven, a private plaintiff may obtain injunctive relief under the Act, along with attorneys’ fees when unconscionable conduct is found to exist.”); Romano v. Galaxy Toyota, 399 N.J.Super. 470, 945 A.2d 49, 58 (N.J.Super.Ct.App.Div.2008) (“Even though plaintiff unsuccessfully proved the existence of an ascertainable loss, and was unable to recover treble damages, plaintiff can recover reasonable attorney’s fees and costs because defendant committed an unlawful practice.”); Cox, 647 A.2d at 465 (“For the sake of completeness we add that a consumer-fraud plaintiff can recover reasonable attorneys’ fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages.”). Clearly, the courts in New Jersey recognize that violations of the CFA may occur, even absent an ultimate finding of an ascertainable loss.
TCCWNA requires that a covered writing include a provision that violates a clearly established legal right of a consumer. Nowhere does TCCWNA add the requirement that the underlying violation be enforceable in a private cause of action. Here, Watkins has pled a violation of the CFA that, although she could not bring herself, could be enforced by the Attorney General. I find the requirement imposed by my colleagues that Watkins plead an ascertainable loss pursuant to the CFA prior to being able to plead a violation .of TCCWNA to be contrary to the clear language of the statute, as well as the case law of the state of New Jersey.
New Jersey’s long history of consumer protection leads me to doubt that the Supreme Court of New Jersey would eviscerate that history by disallowing a claim to proceed under TCCWNA, a purely remedial statute, when the statute creating the substantive violation upon which the TCCWNA claim is based, allows for an omission of information. Here, the menu violates the CFA by failing to provide beverage prices. That violation forms the •basis of the TCCWNA claim. That is, the menu includes a violation of the CFA, thus violating TCCWNA.
In sum, I conclude that, rather than omitting a violation of a clearly established legal right as found by my colleagues, the covered writing at issue here includes a violation of the CFA. For decades, the courts of New Jersey have recognized that violations of the CFA may be based on omissions of information. I can identify no sound basis for ignoring this case law. Therefore, I find Watkins has satisfied the pleading requirements of TCCWNA by pleading an underlying violation of the CFA. I would reverse the District Court’s decision dismissing her complaint for failure to state a claim and allow her case to proceed.

. In relevant part, TCCWNA provides that
No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign- after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.
N.J. STAT. ANN. § 56:12-15.

. The applicable section of the CFA prohibits merchants from selling "any merchandise at retail unless the total selling price of such merchandise is plainly marked by a stamp, tag, label or sign either affixed to the mér-chandise or located at the point where the merchandise is offered for sale.” N.J. Stat. Ann. § 56:8-2.5.

. Since I conclude the District Court erred in its decision to dismiss the complaint, I also find that it abused its discretion in denying the motion for reconsideration.

. For consistency, I am adopting the majority’s use of “covered writing’’ to summarize the language of the statute addressing any "written consumer warranty, notice or sign.”

.The Supreme Court of New Jersey has described TCCWNA in a similar manner. Shelton, 70 A.3d at 549 ("The rights, remedies, and prohibitions conferred by the TCCWNA are ‘in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State.' ” (quoting N.J. Stat. Ann. § 56:12-18)).

. When faced with no decision from the state’s highest court, this Court must turn to - other sources, such as "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.” McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir.1980). See also Wayne Moving, 625 F.3d at 154 ("We begin our analysis with intermediate state court judgments and grant them ‘significant weight in the absence of an indication that the highest state court would rule otherwise.’ ” (quoting Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n. 15 (3d Cir.1996))).

. Pursuant to N.J. Ct. R. 1:36-3, "[n]o unpublished opinion shall constitute precedent or be binding upon any court.”

. In order to state a claim under the CFA, a plaintiff must plead the "three elements required for the prima facie proofs: 1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.” Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 964 A.2d 741, 749 (2009). “The CFA does not demand that a plaintiff necessarily point to an actually suffered loss or to an incurred loss, but only to one that is 'ascertainable.' " Id. at 750.

. I interpret “offer encompassed by TGIF's menu” to mean the offer to sell beer and other beverages.